**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAWRENCE SMITH,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 14-658 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

Before the Court is Lawrence Smith ("Plaintiff" or "Claimant")'s appeal, which seeks review of Administrative Law Judge ("ALJ") Marissa Ann Pizzuto's denial of Plaintiff's application for a period of disability, disability insurance benefits, and supplemental security income. The Court decides this matter without oral argument. For the reasons set forth below, the Court affirms the final decision of the Commissioner of Social Security (the "Commissioner").

I.  **BACKGROUND**

    A.  Procedural History

On July 15, 2010, Plaintiff, alleging disability as of November 13, 2009, applied to the Social Security Administration (the "Administration") for a period of disability, disability insurance benefits, and supplemental security income. (R. at 108-113).[1] The Administration initially denied Plaintiff's application on November 10, 2010 and again upon reconsideration on

---

[1] "R." refers to the pages of the Administrative Record.

October 5, 2011. (*Id.* at 59-61, 65-67). In response, Plaintiff requested an administrative hearing, which occurred before ALJ Marissa Ann Pizzuto on August 1, 2012. (*Id.* at 79).

At the hearing, Plaintiff, who was then 48 years old, testified that he had been employed as a heavy equipment operator at various construction sites until 2005 when he got hurt on the job. (R. at 29). With regard to his lifestyle, Plaintiff testified that he lives alone, and that his daughter helps him when he has to leave the house. (*Id.* at 39-40). He also noted that a friend comes over once a week and cooks meals for him. (*Id.* at 40). Plaintiff testified that his landlord installed a balancing bar in his shower for him. (*Id.* at 47).

On September 24, 2012, ALJ Pizzuto issued a decision, finding that Plaintiff was not disabled from November 13, 2009 through the date of decision. (*Id.* at 12-20). Plaintiff sought Appeals Council review. (*Id.* at 7-8). The Appeals Council denied Plaintiff's request on November 26, 2013, rendering ALJ Pizzuto's decision the final decision of the Commissioner. (*Id.* at 1-3). As a result, Plaintiff appealed to this Court on January 30, 2014. (Compl., ECF No. 1). This Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g), and now recounts Plaintiff's medical history.

B.  Plaintiff's Medical History

Plaintiff contends that he has been disabled since November 13, 2009. Plaintiff is alleging disability due to (1) diabetes, (2) hypertension, (3) degenerative disk disease, (4) a stent in his heart, (5) asthma, and (6) sleep apnea.[2] (R. at 129).

1. Plaintiff's Diabetes Mellitus

Plaintiff has insulin dependent diabetes mellitus. (R. at 254). Plaintiff was diagnosed with diabetes when he was 26 years old. (*Id.*). He now takes insulin twice a day. (*Id.*). At the

---

[2] Plaintiff also alleged disability due to arthritis in both ankles, restless leg syndrome, and degenerative eye disease before the ALJ. Those impairments are not at issue before this Court.

2

hearing before ALJ Pizzuto, he testified that his diabetes had been largely controlled for the preceding six months. (*Id.* at 30-31). Plaintiff also testified that, as a result of the diabetes, he experiences occasional swelling and numbness in his right leg, which affects his ability to wear regular shoes, which, in turn, affects his ability to walk. (*Id.* at 31-33). Plaintiff testified that his physician, Dr. Elamir, gave him a cane which he uses to walk, stand up, and balance when standing. (*Id.* at 33-34). Dr. Hoffman, who conducted a consultative examination on October 15, 2010, reported that Plaintiff's diabetes appeared relatively well controlled with insulin. (*Id.* at 256). Dr. Hoffman also reported that Plaintiff's occasional numbness in the lower extremities is an early symptom of neuropathy, but he had not yet been treated for it. (*Id.* at 254). Dr. Hoffman observed that Plaintiff walked with a cane and determined that Plaintiff had a slightly antalgic gait. (*Id.* at 255).

### 2. Plaintiff's Hypertension

Plaintiff has increased blood pressure, which has been treated with medication for the last five years. (*Id.* at 254). Plaintiff's elevated cholesterol is also managed with medication. (*Id.*)

### 3. Plaintiff's Degenerative Disk Disease

Plaintiff has a history of lower back pain, which he attributes to his history as a construction worker. (*Id.* at 254). An April 2010 MRI of the lumbar spine showed multilevel degenerative changes. (Id. at 351). This condition has been treated with OxyCodone, which Plaintiff testified makes him feel drowsy during the day. (*Id.* at 44). Plaintiff's treating physicians felt that conservative therapy was adequate to treat his symptoms.

### 4. Plaintiff's Stent Placement

Plaintiff has a history of coronary artery disease. In 2009, Plaintiff had an arterial stent placed after he experienced tightness in his chest and doctors found a blockage. (*Id.* at 254).

3

Since then, the condition has been managed with medication and Plaintiff has had no major problems with chest pain. (*Id.*).

### 5. Plaintiff's Asthma

Plaintiff maintains that his asthma prevents him from walking more than one block at a time with his cane. (*Id.* at 35). Plaintiff also testified that his asthma is aggravated by hot weather and drinking cold drinks. (*Id.* at 36). Plaintiff has an inhaler and a nebulizer which he uses at least twice a day. (*Id.* at 35). Dr. Hoffman reported that Plaintiff has been treated for COPD-like symptoms for five years and that he manages these symptoms with the nebulizer and other medication. (*Id.* at 254).

### 6. Plaintiff's Sleep Apnea

Plaintiff also suffers from sleep apnea. Dr. Hoffman reported that this condition has been treated with a CPAP machine for several years. (*Id.*).

## II. LEGAL STANDARD

### A. The Five-Step Process for Evaluating Whether a Claimant Has a Disability

Under the Social Security Act, the Administration is authorized to pay a period of disability, disability insurance benefits, and supplemental security income to "disabled" persons. 42 U.S.C. §§ 423(a), 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). At step one, the ALJ assesses whether the claimant is currently performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(f), 416.920(a)(4)(i). If so, the claimant is not disabled and, thus, the process ends. 20 C.F.R. §§ 404.1520(a)(4)(f), 416.920(a)(4)(i). If not, the ALJ proceeds to step two and determines whether the claimant has a "severe" physical or mental impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Absent such impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Conversely, if the claimant has such impairment, the ALJ proceeds to step three. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ evaluates whether the claimant's severe impairment either meets or equals a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Otherwise, the ALJ moves on to step four, which involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, the ALJ proceeds to the fifth and final step of the process. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

The claimant bears the burden of proof for steps one through four. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). "At step five, the burden of proof shifts to the . . . Administration to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and [RFC]." *Id.* (citing *Ramirez*, 372 F.3d at 551).

B.  The Standard of Review: "Substantial Evidence"[3]

This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Consequently, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

III.  **DISCUSSION**

At step one, ALJ Pizzuto found that Plaintiff had not engaged in substantial gainful activity since November 13, 2009, the alleged onset date. (R. at 14). At step two, ALJ Pizzuto

---

[3] Because the regulations governing supplemental security income—20 C.F.R. § 416.920—are identical to those covering disability insurance benefits—20 C.F.R. § 404.1520—this Court will consider case law developed under both regimes. *Rutherford v. Barnhart*, 399 F.3d 546, 551 n. 1 (3d Cir. 2005) (citation omitted).

6

found that Plaintiff has had the following severe impairments: (1) insulin dependent diabetes mellitus; (2) asthma; (3) sleep apnea; (4) degenerative disk disease; (5) coronary artery disease with a history of stent placement; and (6) hypertension. (*Id.*). At step three, ALJ Pizzuto found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (*Id.* at 15). At step four, ALJ Pizzuto determined that prior to November 13, 2009 Plaintiff had the RFC to perform the full range of sedentary work. (*Id.*). Lastly, at step five, ALJ Pizzuto found that given Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 19). Plaintiff contends that ALJ De Steno erred at steps three, four, and five. (Pl.'s Br. 9-27, ECF No. 8).

    A.    <u>Whether ALJ Pizzuto's Step Three Findings are Based on Substantial Evidence</u>

At step three, an ALJ must "fully develop the record and explain his findings . . . , including an analysis of whether and why [each of the claimant's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett*, 220 F.3d at 120. In conducting such an analysis, there is no formal requirement that an ALJ "use particular language or adhere to a particular format . . . ." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Rather, an ALJ's decision, "read as a whole," must permit meaningful judicial review. *Id.*; *see also Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146 (3d Cir. 2007).

Here, ALJ Pizzuto began her step three analysis with her determination that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (R. at 15). ALJ Pizzuto then proceeded to find that: (1) Plaintiff's diabetes mellitus did not meet the listing for endocrine disorders (Listing

7

9.00); (2) Plaintiff's asthma did not meet the listings that pertain to chronic pulmonary insufficiency (Listing 3.02); (3) Plaintiff's sleep apnea did not meet the listing for sleep-related breathing disorders (Listing 3.10); (4) Plaintiff's degenerative disk disease did not meet the listing for spinal impairments that result in the compromise of a nerve root or the spinal cord (Listing 1.04); (5) Plaintiff's coronary artery disease did not meet the listing for coronary artery disease (Listing 4.04C); (6) Plaintiff's hypertension did not meet any of the cardiac listings in Section 4.00. (*Id.* at 15). Plaintiff argues that ALJ Pizzuto erred at step three because she did not properly consider whether his impairments, in combination, met or medically equaled a listed impairment. (Pl.'s Br. 12-14, ECF No. 8).

Plaintiff generally argues that ALJ Pizzuto failed to properly consider Plaintiff's impairments in combination with each other at step three. (*Id.*). Plaintiff's argument is unpersuasive. With regard to an ALJ's duty to consider a claimant's impairments in combination with one another, the Third Circuit has suggested that an ALJ fulfills that duty if he indicates that he has done so and there is "no reason not to believe him." *Morrison ex. rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008). Moreover, a number of district courts in this Circuit have concluded that an ALJ fulfills his obligation to consider a claimant's impairments in combination with one another when he states that he has done so and offers a thorough review of the evidence in the record. *See, e.g., Mason v. Astrue*, No. 09-5553, 2010 WL 3024849, *6 (D.N.J. Aug. 2, 2010).

Here, ALJ Pizzuto explicitly indicated at the beginning of her step three discussion that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (R. at 15). In light of ALJ Pizzuto's thorough discussion of the record throughout her opinion and detailed explanation as to why

8

each of Plaintiff's impairments did not meet a listing, the Court has no reason to disbelieve ALJ Pizzuto's indication that she considered the combined effect of Plaintiff's impairments. *See Jones*, 364 F.3d at 505 (finding ALJ's step three determination adequate because ALJ's decision, "read as a whole," illustrated that ALJ considered the appropriate factors); *see also Gainey v. Astrue*, No. 10–1912, 2011 WL 1560865, *12 (D.N.J. Apr. 25, 2011) (citation omitted) (holding that "ALJ's detailed analysis of the individual impairments and conclusion that Plaintiff did not have 'an impairment or combination of impairments' that met or equaled a listing is sufficient.").

B. Whether ALJ Pizzuto's RFC Determination is Based on Substantial Evidence

At step four, ALJ Pizzuto determined that Plaintiff has the RFC to perform the full range of "sedentary work."[4] (R. at 15-19). Plaintiff generally argues that ALJ Pizzuto failed to sufficiently articulate the rationale for her RFC assessment. (Pl.'s Br. 14-20). In support of his position, Plaintiff notes that "An ALJ must not simply recite the evidence and then announce a finding." (*Id.* at 16). Plaintiff's argument is unavailing.

In making his or her RFC determination, an ALJ must consider all pertinent and probative evidence. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008) (citing *Burnett*, 220 F.3d at 121 and *Cotter v. Harris*, 642 F.2d 700, 705–07 (3d Cir. 1981)). Here, ALJ Pizzuto provided a thorough three-page discussion of the record in support of her RFC finding, and, in doing so, weighed the available evidence. (R. at 15-19). In particular, the

---

[4] The social security regulations provide that:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967

9

ALJ supported her RFC assessment by considering and weighing the following evidence: (1) Dr. Burk's November 2010 Physical Residual Functional Capacity Assessment; (2) treatment records of Dr. Elamir from December 2009 through July 2012; (3) the April 15, 2010 MRI of Plaintiff's lumbar spine; (4) the March 28, 2011 x-ray of Plaintiff's right ankle; (5) the October 20, 2010 arterial Doppler study of Plaintiff's lower extremities; (6) Dr. Hoffman's October 2010 consultative examination; (7) Dr. Kapoor's December 9, 2010 medical source statement; and (8) Plaintiff's testimony at the August 2012 hearing. (See R. at 16-17).

Contrary to the Plaintiff's argument, ALJ Pizzuto did not simply recite the above evidence and come to a conclusion. Instead, the ALJ explained that while the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms...the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." (R. at 17). Though at least one circuit has described this exact language as "meaningless boilerplate," an ALJ's use of this language "does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013). Such information may include: (1) the extent of a claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment other than medication; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ pointed out that Plaintiff's diabetes, asthma, and hypertension are controlled with medication and the evidence does not suggest that the Plaintiff required recurrent emergency room visits for these conditions. (R. at 17). ALJ Pizzuto also noted that the evidence indicates that the Plaintiff's sleep apnea is adequately treated with a CPAP machine. (*Id.*).

ALJ Pizzuto also pointed to information justifying her finding that Plaintiff's allegations of disabling neuropathy are not supported by the evidence. (*Id.*). The ALJ cited to Dr. Hoffman's October 2010 consultative examination which revealed that Plaintiff's peripheral pulses were decreased, but not absent, and that the Plaintiff had no more than a slight antalgic gait. (*Id.*). ALJ Pizzuto also referenced the treatment records of Dr. Elamir to support her finding. The ALJ noted that the records indicated that Plaintiff's touch, pin, vibratory and proprioception sensations were normal and that there is no evidence that the Plaintiff is precluded from sedentary work. (*Id.* at 18).

The ALJ also pointed out that there is no evidence that Plaintiff's back pain is disabling based on the results of the April 2010 MRI and the October 2010 consultative examination. (*Id.*). Plaintiff's treating physicians felt that conservative therapy was adequate to treat his conditions.

ALJ Pizzuto acknowledged that Dr. Burk opined in his November 2010 RFC form that Plaintiff was capable of sedentary work. (*Id.* at 18). Because ALJ Pizzuto has provided more than a mere scintilla of evidence in support of her RFC determination and given that it is not the role of this Court to reweigh the evidence and reach its own conclusions, *See Williams*, 970 F.2d at 1182 (noting that a district court is not empowered to "weigh the evidence or substitute its conclusions for those of the fact-finder"), the Court affirms ALJ Pizzuto's RFC determination.

    C.    <u>Whether ALJ De Steno Erred at Step Five by Relying on the Medical-Vocational Guidelines</u>

At step five, ALJ Pizzuto concluded that prior to November 13, 2009, a finding of "not disabled" was directed by Medical-Vocational Guideline 201.21. (R. at 19). Plaintiff argues that ALJ Pizzuto should have invoked the testimony of a vocational expert to determine the availability of jobs in the national market. (Pl.'s Br. 20-27). In making such a determination, the ALJ must consider the Plaintiff's age, education, work experience, and residual functional capacity. 20 C.F.R. 404.1569; *Heckler v. Campbell*, 461 U.S. 458, 461-63, 103 S.Ct. 1952, 76 L.Ed.2d. 66 (1983). When a Plaintiff has *both* exertional and non-exertional disabilities, the ALJ may not rely solely on the grids to determine employment availability in the national economy. *Sykes v. Apfel*, 228 F.3d 259, 273 (3d Cir. 2000) (emphasis added). Instead, the ALJ must utilize a "vocational expert or other similar evidence" in order to make such a determination. *Id.* Without utilizing vocational evidence, an ALJ cannot properly establish whether jobs exist in the national economy for a plaintiff with a combination of exertional and non-exertional impairments. *Id.*

Plaintiff asserts that his neuropathy causes non-exertional postural, manipulative, and environmental limitations. However, based on the record in its entirety, the ALJ did not find that Plaintiff suffered from any severe non-exertional impairments, including neuropathy. ALJ Pizzuto properly explained the weight she gave to the different medical evidence and to Plaintiff's subjective complaints, and determined that the "claimant's allegations of disabling neuropathy are not supported by the evidence to the degree alleged." (R. at 17). The Court finds that the ALJ engaged in a comprehensive analysis of the Plaintiff's limitations, and therefore, that this determination was based on substantial evidence from the record.

When a plaintiff suffers solely from exertional limitations, an ALJ may direct a conclusion of "disabled" or "not disabled" by consulting the grids, considering the plaintiff's

age, residual functional capacity, education and work experience. *Allen v. Barnhart*, 417 F.3d 396, 402-03 (3d Cir. 2005) (citing *Heckler*, 461 U.S. at 467-68). In this case, the ALJ found that Plaintiff has an RFC to perform a full range of sedentary work, is a younger individual, has a high school education, and is able to communicate in English. (R. at 19). The ALJ then properly applied Rule 201.21 of the grids to make a determination that Plaintiff is "not disabled." (*Id.*) Thus, as Plaintiff does not have any non-exertional impairments, the ALJ was not required to consult a vocational expert.

## IV. CONCLUSION

The Court has reviewed the entire record and, for the reasons discussed above, concludes that ALJ Pizzuto's determination that Plaintiff was not disabled was supported by substantial evidence. Accordingly, ALJ Pizzuto's decision is affirmed. An appropriate Order accompanies this Opinion.

DATED: November 6, 2014

/s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE